D. W. YANDELL & wife *vs.* R. H. ELAM & others.

April Term, 1873.

STATE COMITY—TRANSFER OF FUNDS FROM THE COURT OF ONE STATE TO THE COURTS OF ANOTHER.—Funds settled in trust upon a married woman and her children, in the custody and control of the Chancery Court of this State, may be transferred to the custody and control of the Chancery Court of another State where the married woman and her children are domiciled, upon its being shown that such transfer is manifestly for the interest of the beneficiaries.

SAME—MODE OF PROCEEDING.—The mode of procedure in the two courts to effectuate the transfer, considered.

*Ed. Mulloy*, for petitioners.

THE CHANCELLOR:—On the 6th day of June, 1851, the sum of twenty thousand dollars of the estate of Frances J. Yandell, then, and now the wife of D. W. Yandell, was, by decree of this court, directed to be invested in bonds of the state of Tennessee, and the bonds were ordered to be transferred to Alexander Allison, as trustee, "for the sole and separate use of the said Frances J. Yandell, free from the debts and control of her husband, and from his marital rights; the interest and income to be reserved for her use

during life, and after her death the capital to vest in and belong to her children living at the time of her death, and any descendants of a child or children, should any of her said children die during her life-time. Her receipt, or order signed by her, is to be sufficient authority for the payment of the interest or income arising from said capital of twenty thousand dollars.''

The investment was made as directed, and the bonds deposited in the custody of the court. Afterwards, and over ten years ago, Alexander Allison departed this life, and no new trustee has been appointed in his place. At the present term of this court, Nathaniel Baxter, Jr., the clerk and master of this court, was appointed trustee as to a portion of the fund, in order to superintend the loan thereof upon collateral security. Previous to this time, a portion of the trust fund, under the orders of my predecessors, the Chancellors of this district, was realized and paid over to persons authorized by Mrs. Yandell, or supposed to be so authorized, to be invested in Louisville, Kentucky, to which place she and her husband had removed not long after the settlement upon her, and where they have continued to reside for many years.

The case comes before me now upon the petition of Frances J. Yandell, by George Maney, her next friend, and sworn to by him, setting forth the fact that she and her husband have been many years resident citizens of the city of Louisville, Kentucky, and are there permanently domiciled, with their children, and suggesting that it is manifestly for her interest and that of her children, that the trust fund now in this court as aforesaid, should be transferred to the control and jurisdiction of the Chancery Court at Louisville, in said state. She states that she has instituted proceedings in the said Chancery Court at Louisville, with a view to have the said trust fund transferred to that court. She prays for such transfer accordingly, and makes a transcript of the proceedings in said chancery court, duly certified, an exhibit to her petition.

Upon an examination of this transcript, it appears that on the 31st day of October, 1872, a petition was filed in the name of Frances Yandell, in said Chancery Court at Louisville, stating the existence of a fund in this court held in trust for her; that the trustee appointed by this court was dead, and that no successor had been appointed. She prayed in said petition that D. W. Yandell, her husband, be appointed trustee and be authorized to withdraw said fund from this court. This petition was signed and sworn to by her attorney.

An answer to this petition was filed by D. W. Yandell, or the same day, and, on the 7th day of December, 1872, an order was made in accordance with the prayer of the petition, appointing D. W. Yandell trustee, without bond or security, and undertaking to authorize him to take charge of he property held by this court.

The solicitor of Mrs. Yandell, in this court, very properly declined to make any application to this court based upon these proceedings, being satisfied that the application would not be entertained.

On the 2d day of April, 1873, an amended petition was filed in the said Louisville Chancery Court, by Mrs. Yandell, duly subscribed and sworn to by her, against her husband, D. W. Yandell, and their two children, Susan and Maria Yandell, both infants, repeating the facts stated in the original petition, and alleging that the petitioner and the defendants were the only persons interested in said fund in this court, and that it was for her interest and the interest of her children that the fund should be brought to, and kept in the custody and control of, the Louisville Chancery Court, within whose jurisdiction the parties interested were permanently domiciled. A duly certified copy of the original decree of this court settling the fund in trust for Mrs. Yandell and her children, was made an exhibit to the petition. The prayer of the first petition, was repeated as the prayer of the amended petition.

Upon this amended petition, process of summons issued

and was duly executed upon the infant defendants, Susan and Maria Yandell. Afterwards, a guardian *ad litem*, was appointed by the court, who appeared and filed an answer for them. The husband filed an answer in proper person, admitting the facts to be as charged. The cause was brought on for hearing before the Chancellor on the 25th day of April, 1873, who delivered an elaborate and satisfactory opinion in writing, which is embodied in the record, and forms a part of the proceedings. The opinion commences by showing that, under the code of practice of the state of Kentucky, a married woman is authorized to sue alone when the action concerns her separate property, or is between herself and her husband, and that, consequently, Mrs. Yandell was entitled to maintain this suit in her own name, without the assistance of a *prochein ami*, the fund settled upon her by the decree of this court being clearly her separate property within the meaning of the code, and by the laws of the state of Kentucky. The Chancellor is further of the opinion that, by the statute law of Kentucky, which he cites, it is provided that the trust property in question "shall not be sold or encumbered by order of a court of equity, and only for the purpose of exchange and re-investment *for the same uses as that of the original conveyance or devise*, and the court shall see that the exchange or re-investment is properly made;" and that said fund, if brought within the operation of the laws of the state of Kentucky, and the jurisdiction of its courts, could only be sold or encumbered by order of a court of equity, and then only for exchange and re-investment for the same use as that of the settlement of the Tennessee courts; and if done by a Kentucky court, it would be its imperative duty to see that the exchange or re-investment is properly made.

The Chancellor is also of opinion that the order of his predecessor upon the original petition, of the 7th day of December, 1872, appointing the husband trustee without bond, was made, doubtless, in ignorance of the character of the

estate, and, in view of the fact that it is doubtful whether the court can appoint a trustee at all until it has obtained control of the fund, was imprudent to say the least, and he expressly sets aside and rescinds that order. The Chancellor, in reference to the relief sought by the petition, is clearly of the opinion that he can do nothing without the concurrence of this court. But, upon principle, he thinks that the two courts might by appropriate orders and decrees, invest his court with the custody and control of the estate in question. He concedes that it is for this court to determine whether the removal can be made without prejudice to any of the citizens of Tennessee, and whether it is for the interest of the *cestuis qui trust* that it should be done. "The whole aim," he very properly says, "of the Tennessee Court in making the settlement, was to secure the property to the separate use of Mrs. Yandell, during her life, and then to her children." "If this court," he adds, "had the custody and control of the property, it could, and it would be its duty, to secure those important objects."

In accordance with the foregoing opinion, it was ordered, adjudged, and decreed upon said petition, that if this court would send the fund to that court, said last mentioned court "will take custody and control of the same by its proper officers, and that it will also, by its proper officers, cause said money, stocks, bonds, or other property to be exchanged for, or re-invested in, other property, real or personal, as may seem best for the *cestuis que trust*, and cause the title or titles thereof to be vested in a prudent and competent trustee, upon the uses and trusts of the original decree of settlement," setting the same out in *haec verba*. The decree further provides that if this court chooses to send and deliver the funds to that court, that said court will cause to be paid out of said estate to the proper officer of this court his actual expenses, and a reasonable compensation for making the transfer; or if the court should prefer to order the fund to be paid to a receiver of that court, said court would send the regular, or a special receiver of said court therefor, first

causing said receiver to execute a sufficient bond to secure a faithful discharge of the duty imposed upon him.

The old rule that personal property has no locality, and follows the law of the owner's domicil, was always subject to many limitations, and has been still further restricted by recent decisions. Mr. Wharton, in view of these decisions, as well as the learning of continental jurists, does not hesitate to reverse the general rule as formerly understood, and to assert the opposite principle, that movables are governed by the *lex rei sitae.* Whart. Conf. of Laws, § 297. And he seems to be justified in the enunciation of the following statement of the present result of the decisions: "Movables, when not massed for the purposes of succession or marriage transfer, and when not in transit, or following the owner's person, are governed by the *lex situs,* except so far as the parties interested may select some other law." Whart. Conf. L., § 311; *Green* v. *Van Buskirk,* 7 Wall. 312; *Waters* v. *Barton,* 1 Cold. 43.

A foreign administrator or executor, it is universally conceded, whose authority springs from the last domicil of the deceased, cannot, by mere force of such authority, take possession of property in countries subject to the English common law. To do this, he must obtain legal authority to act in the courts of the *situs.* Whart. Conf. L., § 604, and the numerous cases there cited. "It is," says the Supreme Court of Tennessee, "an admitted principle of international law, that every state has the right to control and dispose of property actually within its jurisdiction; and it is the duty of every state to protect the rights of its own citizens, and to aid them in the recovery of their just debts, without the necessity of resorting to the distant forum of the original administration." *Gilchrist* v. *Cannon,* 1 Cold. 581; and see also, *Keaton* v. *Campbell,* 2 Hum. 224, 241.

The learned Chancellor of the Louisville Chancery Court, was, therefore, clearly correct in conceding that it is exclusively for this court to say whether a proper case has been made out for giving up its control over the fund in contro-

versy, and allowing it to be transferred to another jurisdiction. And I think he is equally correct in concluding that, upon principles of *inter-state comity*, the two courts might, by appropriate orders and decrees, secure the transfer of such funds from the jurisdiction and control of one court to the jurisdiction and control of the other.

Such transfers have usually been made in the administration of estates. In theory, the law has been held to be, that, when the funds in the hands of an ancillary administrator are sufficient to pay all legal claims existing in the jurisdiction by which such administration is granted, the administrator, after paying all claims and settling his accounts, should transmit the residuum to the decedent's domicil. *Preston* v. *Melville*, 8 Cl. & F. 1 ; *Mackey* v. *Coxe*, 18 How. U. S. 100 ; *Davis* v. *Head*, 3 Peck, 128 ; *Parker's Appeal*, 61 Pa. St. 478.

The transmissibility of the funds of an estate, from the ancillary administrator of one state to the administrator of the domicil in another, was treated as unquestionable in the case of *Keaton* v. *Campbell*, 2 Hum. 241. "But this means," the court say, "when a suit in chancery has been brought by proper persons, the condition of the estate at home and abroad enquired into and ascertained, creditors, distributees, and others interested notified and indemnified, then the court may, by its acts and orders, transmit such fund." "Whether the court," they add, "would order it to be transmitted to the administrator himself, or to some judicial forum where the parties in interest were accounting, we care not to speculate."

In the case of *Baker Andrews' Heirs*, 3 Hum. 592, the question of the transmissibility of funds from this state to another again came before the court. In that case, the funds were derived from the sale of realty for division between the widow and heirs of a decedent. It was held that a foreign guardian of the minor heirs would not be entitled to receive the share of his wards without giving a special bond for the fund, either here or in his own state. The court add: "Nor

would we hold that a court of chancery should, in such cases, always require a bond to be executed in Tennessee and by Tennessee sureties. The interest of the parties, and sometimes the necessity of the case, may make it not improper that the bond should be executed, and the surety be given in the state where the general guardian and wards reside; but in such case the court will see to it that the guardian is a fit person, that the surety is amply good, that the bond in form and substance is valid by the law of the state where it is intended to be enforced, and that it clearly embraces, and renders the obligors liable for, the fund in question.''

"The people of the United States," say our supreme court, in *Keaton* v. *Campbell*, 2 Hum. 237, "constituting one integral government for some purposes, are yet, for other purposes, a community of nations, so to speak, essentially distinct, and even foreign from each other. In this latter relation, they exist as to the comprehensive and highly important interests, founded upon the distribution of personal estate; while, at the same time, the internal commerce, social intercourse, frequent changes, and multiplications of domicil, and all the varied and widely ramified relations and connexions of a prosperous, enterprising and homogeneous people, create rights and interests as to personal property seldom to be limited to a single state." This state of things, they conclude, calls upon the judicial tribunals of all the states for the reciprocal exercise of a liberal comity.

The result of our authorities is, that a fund belonging to infants, or other persons under disability, may be removed from this state to the domicil of the parties in another state, provided the court is satisfied that it is for the interest of such parties, and is further satisfied that the fund is as well secured under the laws of the state to which it is removed as under the laws of this state. It is further to be inferred that our courts may transmit the funds to some judicial tribunal having jurisdiction of the parties, as well as to a trustee or guardian properly qualified.

There are no claimants upon the fund now in question, and no person has any interest in it except Mrs. Yandell and her children. It satisfactorily appears to the court that these beneficiaries have been permanently domiciled in the state of Kentucky, and in the city of Louisville. As a matter of course, it is for their interest, other things being equal, that the fund should be held and invested for them at their domicil, rather than in another state. The person entitled to the immediate use of the fund, the tenant for life, comes to me by petition and says that it is for her interest and that of her children that the transfer should be made, and she asks me to make it, accompanying her application by record evidence that she has instituted legal proceedings in the chancery court of her domicil, to which proceedings her children are made parties, to procure the consent of that court to the transfer, and its acceptance of the same control of the funds as is had by this court. She shows me that said court has agreed to receive the funds and assume the control and management of them, and I have the assurance of the Chancellor of that court, in the form of a written decision and of a decree, that the laws of Kentucky will recognize the trust fixed upon the fund by the decrees of this court precisely as the trust is recognized by the laws of this state, and that it is made his duty, and the duty of his court to see that the rights of the beneficiaries are as securely guarded as they would be by this court. Under these circumstances, I feel no hesitation in making the transfer as requested. I am satisfied that it is for the interest of the beneficiaries that the fund should be transmitted to the forum of their domicil, and their choice. In doing so, I am only obeying the calls of that "liberal comity," to use the words of our supreme court, which the judicial tribunals of the states of this Union owe to each other in the administration of the rights and property of their respective citizens.

The petitioner's counsel may draw up a decree reciting the proceedings in the Louisville Chancery Court and in this court for the transfer of the fund, and ordering the fund in

question to be transmitted from the custody and control of this court to the custody and control of the said Louisville Chancery Court, upon the ground that such transfer is manifestly for the interest of the petitioner and her children. The clerk and master of this court will be authorized and directed to deliver the said fund to the proper officer of said court at Louisville, upon the order of said court, a certified copy of which order and the receipt for the fund, will be reported to this court and entered on its minutes. An order will be made requiring the clerk and master to report the present condition of the fund, how it is invested, and the exact amount, after deducting all costs, fees and allowances due to the officers of this court. A certified copy of that report, when confirmed, will, together with a copy of this opinion and of the decree entered upon it, be transmitted to the said Louisville Chancery Court with said fund. The clerk and master will also record at once in the record book of pleadings the petition filed in this cause and the transcript of the record accompanying it